[Cite as *State v. Dutiel*, 2012-Ohio-5349.]

COURT OF APPEALS
PERRY COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  | JUDGES: |
| --- | --- | --- |
| STATE OF OHIO | : | Hon. W. Scott Gwin, P.J. |
|  | : | Hon. John W. Wise, J. |
| Plaintiff-Appellee | : | Hon. Julie A. Edwards, J. |
|  | : |  |
| -vs- | : |  |
|  | : | Case No. 2012-CA-11 |
| DONALD L. DUTIEL | : |  |
|  | : |  |
| Defendant-Appellant | : | O P I N I O N |


CHARACTER OF PROCEEDING:      Criminal appeal from the Perry County
Court of Common Pleas, Case No.
11CR0088


JUDGMENT:      Affirmed


DATE OF JUDGMENT ENTRY:      November 13, 2012

APPEARANCES:

For Plaintiff-Appellee      For Defendant-Appellant

MIKE DEWINE      ELIZABETH GABA
By: Emily Pelphrey      1231 E. Broad Street
Jennifer Brumby      Columbus, OH 43205
Office of Attorney General
150 E. Gay Street, 16th Floor
Columbus, OH 43215

*Gwin, P.J.*

**{¶1}** Appellant Donald Dutiel ("Dutiel") appeals his conviction and sentence after his "no contest" plea to one count of gross sexual imposition entered in the Perry County Court of Common Pleas. Plaintiff-appellee is the State of Ohio.

*Procedural History*

**{¶2}** On or about July 8, 2010, Kayla Burton claimed that Dutiel had raped her. On July 9, 2010, New Lexington Police Department Sergeant Rick Cline conducted his investigation by taking Kayla's statement while she was at Fairfield Medical Center after the conclusion of a "sexual assault" exam. On July 14, 2010, Sergeant Cline arrested Dutiel without a warrant. On July 20, 2010, Prosecutor Flautt dismissed the criminal case.

**{¶3}** On December 28, 2010, Prosecutor Flautt filed an "Application for Order Authorizing Appointment of Legal Counsel." On January 4, 2011, the trial court filed a judgment entry appointing a special prosecutor to investigate and prosecute the Dutiel case. On February 18, 2011, the Perry County Grand Jury returned a true bill against Dutiel charging him with rape, two counts of kidnapping, abduction and gross sexual imposition. The parties agreed to dismiss this indictment due to the trial court's concern that the case was pending for six months. The special prosecutor again presented the case to the Perry County Grand Jury and a new indictment, alleging the same criminal conduct was filed on September 29, 2011.

**{¶4}** On April 21, 2012, Dutiel entered a plea of "no contest" to one count of gross sexual imposition in violation of 2907.05(A)(1), a felony of the fourth degree. The trial court found Dutiel guilty of gross sexual imposition and ordered the plea form filed.

The trial court ordered a presentence investigation report and set a sentencing date. On April 30, 2012, the trial court sentenced Dutiel to serve a seventeen-month prison sentence.

*Assignments of Error*

{¶5}   Dutiel raises five assignments of error,

{¶6}   "I. THE TRIAL COURT ERRED TO THE PREJUDICE OF DEFENDANT WHEN IT DENIED DEFENDANT'S MOTION TO DISMISS THE INDICTMENT DUE TO THE SPECIAL PROSECUTOR'S LACK OF STANDING TO PROSECUTE THE MATTER. THE SPECIAL PROSECUTOR, APPOINTED UNDER R.C. §305.14, HAD NO LEGAL AUTHORITY TO INVESTIGATE OR INDICT DEFENDANT, AND HER INVESTIGATION AND INDICTMENT VIOLATED THE SEPARATION OF POWERS DOCTRINE AND DEFENDANT'S CONSTITUTIONAL RIGHTS.

{¶7}   "II. THE TRIAL COURT ERRED TO THE PREJUDICE OF DEFENDANT BY DENYING HIS ATTEMPT TO ADMIT HIS EXCULPATORY POLYGRAPH RESULTS INTO EVIDENCE, IN VIOLATION OF HIS RIGHT TO COMPULSORY PROCESS, HIS SIXTH AMENDMENT RIGHT TO PRESENT A DEFENSE, AND HIS FIFTH AMENDMENT RIGHT TO DUE PROCESS.

{¶8}   "III. THE TRIAL COURT ERRED TO THE PREJUDICE OF DEFENDANT BY DENYING THE ADMISSION OF CRITICAL EVIDENCE UNDER OHIO'S RAPE SHIELD STATUTE, IN VIOLATION OF THE SIXTH AMENDMENT'S CONFRONTATION CLAUSE AS APPLIED TO THE STATES THROUGH THE FOURTEENTH AMENDMENT, AND IN VIOLATION OF DEFENDANT'S DUE PROCESS RIGHTS. OHIO'S RAPE SHIELD STATUTE MAY BE

UNCONSTITUTIONAL ON ITS FACE AS APPLIED IN THIS CASE, PURSUANT TO *STATE V. GARDNER*.

**{¶9}** "IV. THE TRIAL COURT ERRED TO THE PREJUDICE OF DEFENDANT BY DENYING HIS MOTIONS OF 11-25-11[SIC.] AND 11-28-11 [SIC.]. THE TOTALITY OF THE CIRCUMSTANCES OF THE DENIAL OF THESE MOTIONS COMBINED WITH THE DENIAL OF MOST OF THE RAPE SHIELD AND POLYGRAPH MOTIONS, CREATED A HOBSON'S CHOICE FOR A PLEA, IN VIOLATION OF THE SIXTH AMENDMENT'S CONFRONTATION CLAUSE AS APPLIED TO THE STATES THROUGH THE FOURTEENTH AMENDMENT, AND IN VIOLATION OF DEFENDANT'S DUE PROCESS RIGHTS.

**{¶10}** "V. THE TRIAL COURT ERRED TO THE PREJUDICE OF DEFENDANT BY SENTENCING THE DEFENDANT TO 17 MONTHS ON AN F4, [sic.] COMPLETELY IGNORING THE P.S.I. THIS SENTENCE VIOLATED DEFENDANT'S RIGHTS UNDER THE FIFTH, SIXTH, EIGHTH AND FOURTEENTH AMENDMENTS TO THE U.S. CONSTITUTION AND ARTICLE I, §§I, 5, 9, 10, 16 AND 20 OF THE OHIO CONSTITUTION."

I.

**{¶11}** In his first assignment of error, Dutiel argues R.C. 305.14 was incorrectly used in the instant case to employ a special prosecutor.

**{¶12}** On December 28, 2010, the elected prosecutor for Perry County filed an application to appoint a special prosecutor for the case involving Dutiel. This motion was filed pursuant to R.C. 305.14, alleging that the office of the Perry County Prosecuting

Attorney had a conflict in prosecuting the case. The trial court signed an order granting the appointment of a special prosecutor.

**{¶13}** Courts of common pleas possess inherent power to appoint special prosecutors in criminal matters. See *State v. Ross* (*In re Cirigliano*), 105 Ohio St.3d 1223, 2004-Ohio-7352, 826 N.E.2d 287,¶16; *State ex rel. Master v. Cleveland*, 75 Ohio St.3d 23, 27, 661 N.E.2d 180(1996); *State ex rel. Johnson v. Talikka*, 71 Ohio St.3d 109, 642 N.E.2d 353(1994); *State ex rel. Williams v. Zaleski* (1984), 12 Ohio St.3d 109, 465 N.E.2d 861(1984); *State v. Bunyan*, 51 Ohio App.3d 190, 555 N.E.2d 980(3rd Dist.1988).

**{¶14}** We must be mindful of the " * * * elementary proposition of law that an appellant, in order to secure reversal of a judgment against him, must not only show some error but must also show that that error was prejudicial to him." *See Smith v. Flesher*, 12 Ohio St. 2d 107, 233 N.E. 2d 137(1967); *State v. Stanton*, 15 Ohio St.2d 215, 217, 239 N.E.2d 92, 94(1968); *Wachovia Mtg. Corp. v Aleshire*, Licking App. No. 09 CA 4, 2009-Ohio-5097 at ¶16. See, also, App.R. 12(D).

**{¶15}** The trial court appropriately appointed a special prosecutor in Dutiel's case. A conflict of interest creates a situation where it would be in the public interest to allow the court of common pleas to utilize its broad discretion and appoint a "special" prosecutor to represent the state. *Bunyan*, 51 Ohio App.3d at 192.

**{¶16}** The record does not affirmatively show that any mistaken reference to R.C. 305.14 prejudiced Dutiel.

**{¶17}** Dutiel's first assignment of error is overruled in its entirety.

II.

**{¶18}** Dutiel contends that the trial court erred by failing to permit him to introduce evidence at trial that he had taken and passed a polygraph examination.

**{¶19}** The Ohio Supreme Court has "not adopted the unrestrained use of polygraph results at trial, and polygraphs themselves remain controversial." *In re D.S.,* 111 Ohio St.3d 361, 856 N.E.2d 921, 2006-Ohio-5851, ¶13. Moreover, as stated in *State v. Barton,* 12th Dist. No. CA2005-03-036, 2007-Ohio-1099, the results of a polygraph examination are generally "inadmissible since such tests have not attained scientific or judicial acceptance as an accurate and reliable means of ascertaining truth or deception." *Id.* at ¶ 98.

**{¶20}** A trial court cannot admit the results of a polygraph test into evidence simply at an accused's request. *State v. Jamison*, 49 Ohio St.3d 182, 190, 552 N.E.2d 180 (1990). Instead, polygraph test results are only admissible if both the prosecution and defense jointly stipulate that the accused will take a polygraph test and that the results will be admissible. *Id.*; *State v. Souel,* 53 Ohio St.2d 123, 372 N.E.2d 1318 at syllabus; *In re D.S.* at ¶13. However, even when there is a stipulation between the parties to that effect, the polygraph test results are still only admissible if the trial court, in its sound discretion, decides to accept such evidence, and then for corroboration or impeachment purposes only. *Souel at syllabus; In re D.S.* at ¶ 13.; *but, see*, *State v. Sharma,* 143 Ohio Misc.2d 27, 875 N.E.2d 1002, 2007-Ohio-5404(C.P.) (polygraph test results sufficiently reliable to permit their admission at trial).

**{¶21}** In the present case, the prosecution did not stipulate to the admissibility of the polygraph results that Dutiel sought to offer into evidence before the tests were

performed. Consistent with *Souel* and its progeny, which continue to state the law of Ohio, the results of defendant's polygraph tests are inadmissible at trial. *State v. Bell,* 12th Dist. No. CA2008-05-044, 2009-Ohio-2335, ¶49; *In re J.F.,* 9th Dist. No. 24490, 2009-Ohio-1867, ¶10.

**{¶22}** Dutiel's second assignment of error is overruled in its entirety.

III.

**{¶23}** Dutiel contends that the trial court abused its discretion by denying him the opportunity to present evidence concerning the victim, Kayla Burton. The record reflects that the trial court ruled that certain evidence was inadmissible pursuant to the so-called Rape Shield law, R.C. 2907.02(D). *See,* Judgment Entry filed March 22, 2012 at 3. However, the trial court further ruled that Dutiel might present evidence regarding the victim exposing herself to him, subject to any objection other than R.C. 2907.02 (D). The court found that the proposed testimony did not involve "sexual activity" as defined in R.C. 2907.01; therefore, it was not protected under the rape shield statute, R.C. 2907.02(D). Id.

**{¶24}** R.C. 2907.02 provides, in part

(D) Evidence of specific instances of the victim's sexual activity, opinion evidence of the victim's sexual activity, and reputation evidence of the victim's sexual activity shall not be admitted under this section unless it involves evidence of the origin of semen, pregnancy, or disease, or the victim's past sexual activity with the offender, and only to the extent that the court finds that the evidence is material to a fact at issue in the case

and that its inflammatory or prejudicial nature does not outweigh its probative value.

(E) Prior to taking testimony or receiving evidence of any sexual activity of the victim or the defendant in a proceeding under this section, the court shall resolve the admissibility of the proposed evidence in a hearing in chambers, which shall be held at or before preliminary hearing and not less than three days before trial, or for good cause shown during the trial.

**{¶25}** The trial court conducted a hearing on Dutiel's proposed evidence on March 21, 2012. At that hearing, Dutiel, through counsel, sought to introduce at trial evidence that the victim and her mother months prior to the time of the incident in Dutiel's case invited Dutiel on a "sex vacation." (T. March 21, 2012 at 3). However, it was revealed that much of the proposed witness' testimony referred to the victim's mother. (Id. at 3-4). Further Dutiel wished to present evidence from a third party that the mother told the witness that the victim and her mother would go to hotels for sex and that they wanted Dutiel to go with them and give him the "thrill of his life." (Id. at 4). Further witnesses were proffered that would testify to the promiscuous nature of the victim and her mother, and that the mother had propositioned the witness. (Id. at 4-5). Dutiel also sought to introduce evidence that the mother allegedly sold drugs and she would do it with the victim. (Id. at 5). Further, Dutiel sought to introduce evidence from Dr. Bowman. Dr. Bowman would testify, "The medical evidence does not show that Miss Burton was a virgin at the time of the alleged event." (Id. at 7-8).

**{¶26}** The admission or exclusion of relevant evidence is within the court's sound discretion. See generally *State ex rel. Gilbert v. Cincinnati*, 125 Ohio St.3d 385, 2010-Ohio-1473, 928 N.E.2d 706, ¶ 35.

**{¶27}** Although evidence of past sexual history of the victim is generally excluded, the defendant's past sexual history with the victim is admissible if it is material to a fact at issue and is not inflammatory or overly prejudicial. R.C. 2907.02(D). The Ohio Supreme Court has addressed the question of the materiality of the victim's past sexual activity with the accused in *State v. Graham*, 58 Ohio St.2d 350,  390 N.E.2d 805(1979).

**{¶28}** The court, in determining whether prior acts should be admitted, must balance the interests of the victim, whom the statute is designed to protect, and the defendant's right to confront and cross-examine the state's witnesses. *State v. Williams*, 21 Ohio St.3d 33, 487 N.E.2d 560(1986). If the evidence in question is merely being used to impeach the victim's credibility, it is not of probative value as to the alleged rape itself and should not be admitted. Id. However, if the evidence has probative value to the determinative issue of fact—i.e., whether the victim was raped by the defendant on the date alleged—then the probative value of the testimony outweighs any interest the state has in exclusion. Id. at 36, 487 N.E.2d 560.

**{¶29}** The evidence sought to be introduced by Dutiel was not offered to negate the state's inference of an element of the crime. Evidence relating to the victim's mother was not relevant to any element of any of the crimes that Dutiel was charged. Further, the evidence concerning the victim's mother did not have any tendency to make the

existence of any fact that is of consequence to the determination of the matter more probable or less probable than it would be without it. Evid. R. 401.

**{¶30}** Accordingly, the trial court did not err in excluding evidence concerning the victim's mother.

**{¶31}** Concerning the victim, the evidence was clearly offered as reputation evidence of the victim's sexual activity, which had no probative value. Dutiel additionally was seeking to introduce this testimony through inadmissible hearsay of a third-party witness. Expert testimony ostensibly pertaining to the virginity of the victim was offered solely to impeach the victim, and has no bearing on consent or lack thereof to sexual relations with Dutiel.

**{¶32}** In *Rigby v. Lake County*, 58 Ohio St.3d 269, 271, 569 N.E.2d 1056, 1058(1991), the Supreme Court reaffirmed the longstanding test for appellate review of admission of evidence:

> Ordinarily, a trial court is vested with broad discretion in determining the admissibility of evidence in any particular case, so long as such discretion is exercised in line with the rules of procedure and evidence. The admission of relevant evidence pursuant to Evid.R. 401 rest within the sound discretion of the trial court. E.g., State v. Sage (1987), 31 Ohio St.3d 173, 31 OBR 375, 510 N.E.2d 343, paragraph two of the syllabus. An appellate court, which reviews the trial court's admission or exclusion of evidence, must limit its review to whether the lower court abused its discretion. *State v. Finnerty* (1989), 45 Ohio St.3d 104, 107, 543 N.E. 2d 1233, 1237. As this court has noted many times, the term

'abuse of discretion' connotes more than an error of law; it implies that the court acted unreasonably, arbitrarily or unconscionably. E.g., Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 482, 450 N.E.2d 1140, 1142.

**{¶33}** A reviewing court should be slow to interfere unless the court has clearly abused its discretion and a party has been materially prejudiced thereby. *State v. Maurer*, 15 Ohio St. 3d 239, 264, 473 N.E.2d 768, 791(1984). The trial court must determine whether the probative value of the evidence and/or testimony is substantially outweighed by the danger of unfair prejudice, or of confusing or misleading the jury. *See State v. Lyles*, 42 Ohio St. 3d 98, 537 N.E.2d 221(1989).

**{¶34}** There was nothing unreasonable, arbitrary, or unconscionable about the trial court's handling of the proposed testimony concerning the victim's alleged prior sexual history in this case. We therefore find that the trial court properly refused to allow Dutiel's proposed evidence.

**{¶35}** Dutiel's third assignment of error is overruled in its entirety.

IV.

**{¶36}** In his fourth assignment of error, Dutiel asserts,

On 11-25-11, Defendant filed six motions, which included in pertinent part, a Motion for Order for Fairfield Medical Records from July 8/July 9 2012 regarding Kayla Burton, and a Motion for Grand Jury Transcript of Kayla Burton's Testimony and Rick Cline's Testimony. On 11-28-11, Defendant filed eight motions, which included a Request for Specific *Kyles* and *Brady* Information, and a Motion for a Court Order to

the Department of Health to Determine the Existence of a Birth Certificate Where Kayla Burton is the Mother of a Child. The Court denied all these motions. That denial, along with the denial of most of the Rape Shield evidence, and the denial of the admission of the polygraph results, foreclosed Defendant from presenting a proper defense. These rulings by the court imposed an extraordinary unconstitutional burden on the free exercise of the Sixth Amendment right to an adjudication of guilt by one's peers. Defendant had no choice but to take a plea bargain. Dutiel was given a Hobson's choice: go to trial, unable to present exculpatory evidence and risk a significant sentence, or plead to an F4.

**{¶37}** Initially we note a deficiency in Dutiel's appellate brief; it does not comply with App.R.16 (A)(7), which provides,

The appellant shall include in its brief, under the headings and in the order indicated, all of the following: * * * An argument containing the contentions of the appellant with respect to each assignment of error presented for review and the reasons in support of the contentions, with citations to the authorities, statutes, and parts of the record on which appellant relies. The argument may be preceded by a summary.

**{¶38}** "If an argument exists that can support [an] assignment of error, it is not this court's duty to root it out." *Thomas v. Harmon,* 4th Dist. No. 08CA1 7, 2009-Ohio-3299, at ¶ 14, quoting *State v. Carman,* 8th Dist. No. 90512, 2008-Ohio-4368, at ¶ 31. "It is not the function of this court to construct a foundation for [an appellant's] claims; failure to comply with the rules governing practice in the appellate courts is a tactic

which is ordinarily fatal." *Catanzarite v. Boswell,* 9th Dist. No. 24184, 2009-Ohio-1211, at ¶ 16, quoting *Kremer v. Cox*, 114 Ohio App.3d 41, 60, 682 N.E.2d 1006 (9th Dist. 1996). Therefore, "[w]e may disregard any assignment of error that fails to present any citations to case law or statutes in support of its assertions." *Frye v. Holzer Clinic, Inc.,* 4th Dist. No. 07CA4, 2008-Ohio-2194, at ¶12. See, also, App.R. 16(A)(7); App.R. 12(A)(2); *Albright v. Albright,* 4th Dist. No. 06CA35, 2007-Ohio-3709, at ¶ 16; *Tally v. Patrick,* 11th Dist. No. 2008-T-0072, 2009-Ohio-1831, at ¶21-22; *Jarvis v. Stone,* 9th Dist. No. 23904, 2008-Ohio-3313, at ¶23; *State v. Paulsen*, 4th Dist. Nos. 09CA15, 09CA16, 2010-Ohio-806, ¶6; *State v. Norman*, 5th Dist. No. 2010-CA-22, 2011-Ohio-596, ¶29; *State v. Untied*, 5th Dist. No. CT20060005, 2007 WL 1122731, ¶141.

{¶39} According to App. R. 12(A)(2), "The court may disregard an assignment of error presented for review if the party raising it fails to identify in the record the error on which the assignment of error is based or fails to argue the assignment separately in the brief, as required under App. R. 16(A)." An appellate court may rely upon App.R. 12(A) in overruling or disregarding an assignment of error because of "the lack of briefing" on the assignment of error. *Hawley v. Ritley*, 35 Ohio St.3d 157, 159, 519 N.E.2d 390, 392-393(1988); *Abon, Ltd. v. Transcontinental Ins. Co.*, 5th Dist. No. 2004-CA-0029, 2005 WL 1414486, ¶100; *State v. Miller*, 5th Dist. No. 04-COA-003, 2004-Ohio-4636, ¶41. "Errors not treated in the brief will be regarded as having been abandoned by the party who gave them birth." *Uncapher v. Baltimore & Ohio Rd. Co.*, 127 Ohio St. 351, 356, 188 N.E. 553, 555(1933).

{¶40} In the case at bar, Dutiel has wholly failed to provide any explanation concerning the legal reasons in support of his argument that the trial court was wrong

not to grant any one or more of the fifteen motions filed on his behalf in the trial court. Dutiel has cited no authority in support of his claim that the trial court's denial of the motions was incorrect-not a single citation to a statute, case or treatise. Further, Dutiel has wholly failed to identify by caption and to argue concerning eleven of the fifteen motions in his assignment of error. However, in the interest of justice, we shall address the four motions Dutiel specifically referenced in his fourth assignment of error notwithstanding that he has failed to advance any reason or authority to support his position that the trial court's rulings were erroneous.

{¶41} We begin by noting, that by Judgment Entry filed November 2, 2011, the trial court granted Dutiel's motion for disclosure of impeachment evidence. Also on that date, by separate judgment entries, the trial court granted Dutiel's motions for: 1). telephone records; 2). additional telephone records; 3). additional DNA evidence and Labcorp records, including the rape kit, 9-1-1 call's, photographs; records of unexpected allele protection or possible contamination for both labs; and 3). exclusion of Dutiel's prior bad acts per Evid. R. 403 and Evid. R. 404.

{¶42} By Judgment Entry filed November 10, 2011, the trial court found Dutiel's motion to compel to be moot.

{¶43} The record further reflects that the state did provide the medical records for the victim. Dutiel's attorney found it difficult to believe that the records comprised six pages; however, nothing in the case has suggested additional records exist that were not given to the defense. Further, the record reflects that Dutiel was given access to the rape kit and the laboratory records. This appears to be the crux of Dutiel's contention at the trial court level. *See*, T. Aug. 31, 2011 at 23.

**{¶44}** In Ohio, the long-standing tradition of grand jury secrecy is well pronounced in case law. *State v. Greer*, 66 Ohio St.2d 139,146, 420 N.E.2d 982(1981). Typically, "[g]rand jury proceedings are secret, and an accused is not entitled to inspect grand jury transcripts either before or during trial unless the ends of justice require it and there is a showing by the defense that a particularized need for disclosure exists which outweighs the need for secrecy." *Greer*, 66 Ohio St.2d 139, 420 N.E.2d 982, paragraph two of the syllabus, *citing and approving State v. Patterson*, 28 Ohio St.2d 181 277 N.E.2d 201(1971).

**{¶45}** To demonstrate a particularized need for the disclosure of grand jury testimony, a defendant must show whether "it is probable that the failure to disclose the testimony will deprive the defendant of a fair adjudication of the allegations placed in issue by the witness' trial testimony." *Greer*, 66 Ohio St.2d 139, 420 N.E.2d 982, paragraph three of the syllabus.

**{¶46}** The release of grand jury testimony requires a showing of a particularized need, which cannot be established on the basis of speculative pretrial allegations of potentially inconsistent testimony. See *State v. CECOS Internatl. Inc.*, 38 Ohio St.3d 120, 526 N.E.2d 807(1988).

**{¶47}** Our review of the record in the case at bar reflects that Dutiel's request was based on no more than a speculative belief that the grand jury testimony might contain inconsistencies. Ohio courts have consistently found that a particularized need is not shown by anticipated inconsistencies. *State v. Godfrey*, 181 Ohio App.3d 75, 2009-Ohio-547, 907 N.E. 2d 1230 (3rd Dist.), ¶ 16; *State v. Luks*, 8th Dist. No. 89869,

2008–Ohio–3974, ¶ 48. *State v. Crosky,* 10th Dist. No. 06AP–816, 2007–Ohio–6533, ¶ 124.

**{¶48}** In addition, the Ohio Supreme Court has held that the determination of prejudice "can be made only after the witness testified at trial, and, generally, cannot be used by an accused for ascertaining the evidence of the prosecution for the purpose of trial preparation." *State v. Laskey*, 21 Ohio St.2d 187, 191, 257 N.E.2d 65(1970), *vacated in part on other grounds*, 408 U.S. 936, 92 S.Ct. 2861, 33 L.Ed.2d 753(1972). See also *State v. Coley*, 93 Ohio St.3d 253, 754 N.E.2d 1129(2001).

**{¶49}** Had Dutiel demonstrated a particularized need for access to the transcripts of the grand jury proceedings to obtain impeaching testimony after the witness testified at trial, the trial court would be required to conduct an in-camera review to determine whether material inconsistencies exist. Accordingly, Dutiel was not prejudiced by a pre-trial denial of his request.

**{¶50}** We find the trial court did not abuse its discretion in denying Dutiel's motions of grand jury testimony of the state's witnesses.

**{¶51}** Dutiel's request for a birth record showing Kayla Burton is the mother of a child is purely speculative. Any supposed probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues and misleading the jury. Evid.R. 403(A). Again, Dutiel is not prejudiced by the trial court's pre-trial ruling on this issue because he was free to revisit the admissibly of such evidence after Burton's direct examination at trial had he shown the relevance and admissibility under the rules of evidence.

**{¶52}** Because Dutiel has failed to demonstrate that any of the trial court's rulings on his pre-trial motions was incorrect and unfairly prejudicial, his "Hobson's choice" argument must necessarily fail.

**{¶53}** Dutiel's fourth assignment of error is overruled in its entirety.

V.

**{¶54}** Dutiel contends that the trial court abused its discretion by sentencing him to serve 17 months in prison.

**{¶55}** In *State v. Kalish*, 120 Ohio St.3d 23, 2008-Ohio-4912, 896 N.E.2d 124, the Ohio Supreme Court reviewed its decision in *State v. Foster*, 109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470 as it relates to the remaining sentencing statutes and appellate review of felony sentencing. See, *State v. Snyder*, 5th Dist. No. 2008-CA-25, 2008-Ohio-6709, 2008 WL 5265826.

**{¶56}** In *Kalish*, the Court discussed the affect of the *Foster* decision on felony sentencing. The Court stated that, in *Foster*, the Ohio Supreme Court severed the judicial fact-finding portions of R.C. 2929.14, holding that "trial courts have full discretion to impose a prison sentence within the statutory range and are no longer required to make findings or give their reasons for imposing maximum, consecutive, or more than the minimum sentences." *Kalish* at ¶ 1 and 11, 896 N.E.2d 124, citing *Foster* at ¶ 100, See also, *State v. Payne*, 114 Ohio St.3d 502, 2007-Ohio-4642, 873 N.E.2d 306; *State v. Firouzmandi*, 5th Dist. No. 2006-CA-41, 2006-Ohio-5823, 2006 WL 3185175.

**{¶57}** "Thus, a record after *Foster* may be silent as to the judicial findings that appellate courts were originally meant to review under 2953.08(G)(2)." *Kalish* at ¶ 12. However, although *Foster* eliminated mandatory judicial fact-finding, it left intact R.C.

2929.11 and 2929.12, and the trial court must still consider these statutes. *Kalish* at ¶ 13, see also *State v. Mathis*, 109 Ohio St.3d 54, 2006-Ohio-855, 846 N.E.2d 1; *State v. Firouzmandi*, supra at ¶ 29.

**{¶58}** "Thus, despite the fact that R.C. 2953.08(G)(2) refers to the excised judicial fact-finding portions of the sentencing scheme, an appellate court remains precluded from using an abuse-of-discretion standard of review when initially reviewing a defendant's sentence. Instead, the appellate court must ensure that the trial court has adhered to all applicable rules and statutes in imposing the sentence. As a purely legal question, this is subject to review only to determine whether it is clearly and convincingly contrary to law, the standard found in R.C. 2953.08(G)." *Kalish* at ¶ 14.

**{¶59}** Therefore, *Kalish* holds that, in reviewing felony sentences and applying *Foster* to the remaining sentencing statutes, the appellate courts must use a two-step approach. "First, they must examine the sentencing court's compliance with all applicable rules and statutes in imposing the sentence to determine whether the sentence is clearly and convincingly contrary to law. If this first prong is satisfied, the trial court's decision in imposing the term of imprisonment shall be reviewed under an abuse of discretion standard." *Kalish* at ¶ 4, *State v. Foster*, 109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470.

**{¶60}** The Supreme Court held, in *Kalish*, that the trial court's sentencing decision was not contrary to law. "The trial court expressly stated that it considered the purposes and principles of R.C. 2929.11, as well as the factors listed in R.C. 2929.12. Moreover, it properly applied post-release control, and the sentence was within the permissible range. Accordingly, the sentence is not clearly and convincingly contrary to

law." *Kalish* at ¶ 18. The Court further held that the trial court "gave careful and substantial deliberation to the relevant statutory considerations" and that there was "nothing in the record to suggest that the court's decision was unreasonable, arbitrary, or unconscionable." *Kalish* at ¶ 20.

**{¶61}** In the case at bar, Dutiel was convicted of gross sexual imposition a felony of the fourth degree. Sentences that a court can impose are six, seven, eight, nine, ten, eleven, twelve, thirteen, fourteen, fifteen, sixteen, seventeen, or eighteen months. R.C. 2929.14(A)(4). Dutiel was sentenced to 17 months.

**{¶62}** Upon review, we find that the trial court's sentencing on the charge complies with applicable rules and sentencing statutes. The sentence was within the statutory sentencing range. Furthermore, the record reflects that the trial court considered the purposes and principles of sentencing and the seriousness and recidivism factors as required in Sections 2929.11 and 2929.12 of the Ohio Revised Code and advised Dutiel regarding post release control. Therefore, the sentence is not clearly and convincingly contrary to law.

**{¶63}** Having determined that the sentence is not contrary to law we must now review the sentence pursuant to an abuse of discretion standard. *Kalish* at ¶ 4; *State v. Firouzmandi,* supra at ¶ 40.

**{¶64}** Thus, post-*Foster,* "there is no mandate for judicial fact-finding in the general guidance statutes. The court is merely to 'consider' the statutory factors." *Foster* at ¶ 42. *State v. Rutter,* 5th Dist. No. 2006-CA-0025, 2006-Ohio-4061; *State v. Delong,* 4th Dist. No. 05CA815, 2006-Ohio-2753 at ¶ 7-8. Therefore, post-*Foster,* trial courts are still required to consider the general guidance factors in their sentencing decisions.

**{¶65}** There is no requirement in R.C. 2929.12 that the trial court states on the record that it has considered the statutory criteria concerning seriousness and recidivism or even discussed them. *State v. Polick*, 101 Ohio App.3d 428, 431, 655 N.E.2d 820(4th Dist. 1995); *State v. Gant,* 7th Dist. No. 04 MA 252, 2006-Ohio-1469, at ¶ 60 (nothing in R.C. 2929.12 or the decisions of the Ohio Supreme Court imposes any duty on the trial court to set forth its findings), citing *State v. Cyrus* (1992), 63 Ohio St.3d 164, 166; *State v. Hughes,* 6th Dist. No. WD-05-024, 2005-Ohio-6405, at ¶10 (trial court was not required to address each R.C. 2929.12 factor individually and make a finding as to whether it was applicable in this case), *State v. Woods,* 5th Dist. No. 05 CA 46, 2006-Ohio-1342 at ¶19 ("... R.C. 2929.12 does not require specific language or specific findings on the record in order to show that the trial court considered the applicable seriousness and recidivism factors"). (Citations omitted).

**{¶66}** Where the record lacks sufficient data to justify the sentence, the court may well abuse its discretion by imposing that sentence without a suitable explanation. Where the record adequately justifies the sentence imposed, the court need not recite its reasons. In other words, an appellate court may review the record to determine whether the trial court failed to consider the appropriate sentencing factors. *State v. Firouzmandi,* 5th Dist No. 2006-CA41, 2006-Ohio-5823 at ¶ 52.

**{¶67}** Accordingly, appellate courts can find an "abuse of discretion" where the record establishes that a trial judge refused or failed to consider statutory sentencing factors. *Cincinnati v. Clardy*, 57 Ohio App.2d 153, 385 N.E.2d 1342(1st Dist. 1978). An "abuse of discretion" has also been found where a sentence is greatly excessive under traditional concepts of justice or is manifestly disproportionate to the crime or the

defendant. *Woosley v. United States*, 478 F.2d 139, 147(8th Cir. 1973). The imposition by a trial judge of a sentence on a mechanical, predetermined or policy basis is subject to review. *Woosley, supra* at 143-145. Where the severity of the sentence shocks the judicial conscience or greatly exceeds penalties usually exacted for similar offenses or defendants, and the record fails to justify and the trial court fails to explain the imposition of the sentence, the appellate court's can reverse the sentence. *Woosley, supra* at 147. This by no means is an exhaustive or exclusive list of the circumstances under which an appellate court may find that the trial court abused its discretion in the imposition of sentence in a particular case. *State v. Firouzmandi,* supra.

{¶68} In the case at bar, the court had the benefit of a pre-sentence investigation report, statements from the victim, the victim's mother and Dutiel's daughter. The trial court found that Dutiel's relationship with the victim facilitated the offense and that Dutiel has shown no remorse. The trial court specifically indicated that its decision was guided by the overriding principles and purposes of sentencing, to punish the offender and to protect the public from future crime. The trial court further considered the seriousness and recidivism as factors in making the sentencing decision.

{¶69} There is no evidence in the record that the judge acted unreasonably by, for example, selecting the sentence arbitrarily, basing the sentence on impermissible factors, failing to consider pertinent factors, or giving an unreasonable amount of weight to any pertinent factor. We find nothing in the record of Dutiel's case to suggest that his sentence was based on an arbitrary distinction that would violate the Due Process Clause of the Fifth Amendment.

{¶70} Dutiel's fifth assignment of error is overruled in its entirety.

**{¶71}** For the foregoing reasons, the judgment of the Perry County Court of Common Pleas, Ohio, is affirmed.

By: Gwin, P.J.,

Wise, J., and

Edwards, J., concur

_____
HON. W. SCOTT GWIN

_____
HON. JOHN W. WISE

_____
HON. JULIE A. EDWARDS

WSG:clw 1019

[Cite as *State v. Dutiel*, 2012-Ohio-5349.]

IN THE COURT OF APPEALS FOR PERRY COUNTY, OHIO

FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | |
| | : | |
| | : | |
| -vs- | : | JUDGMENT ENTRY |
| | : | |
| DONALD L. DUTIEL | : | |
| | : | |
| | : | |
| Defendant-Appellant | : | CASE NO. 2012-CA-11 |

For the reasons stated in our accompanying Memorandum-Opinion, the judgment of

the Perry County Court of Common Pleas, Ohio, is affirmed.  Costs to appellant.

_____

HON. W. SCOTT GWIN

_____

HON. JOHN W. WISE

_____

HON. JULIE A. EDWARDS