[Cite as *State v. Willis*, 2015-Ohio-3739.]

COURT OF APPEALS
LICKING COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| STATE OF OHIO | JUDGES: |
| | Hon. William B. Hoffman, P. J. |
| Plaintiff-Appellee | Hon. Sheila G. Farmer, J. |
| | Hon. John W. Wise, J. |
| -vs- | |
| | Case No. 14 CA 103 |
| MATTHEW WILLIS | |
| | |
| Defendant-Appellant | O P I N I O N |


CHARACTER OF PROCEEDING:    Criminal Appeal from the Municipal Court,
Case No.  14TRC04033


JUDGMENT:    Affirmed


DATE OF JUDGMENT ENTRY:    September 14, 2015


APPEARANCES:

For Plaintiff-Appellant    For Defendant-Appellee

ROBERT E. CALESARIC    AMY DAVISON
35 South Park Place, Suite 150    40 West Main Street
Newark, Ohio  43055    Newark, Ohio  43055

*Wise, J.*

{¶1}.  Appellant Matthew Willis appeals the decision of the Licking County Municipal Court, which denied his motion to suppress evidence in an OMVI case. Appellee is the State of Ohio. The relevant facts leading to this appeal are as follows.

{¶2}.  On April 27, 2014, at about 2:30 AM, Officer Alex Colles of the Pataskala Police Department was patrolling in a marked police cruiser in the area of Havens Corners. His cruiser was equipped with a MPH Python III model radar device utilizing the "Ka" band. Tr. at 6. Colles testified that this model can be used in stationary or moving mode. Tr. at 8 - 9.

{¶3}.  According to Officer Colles, an eastbound  vehicle passed by him while he was traveling in the westbound lane on Havens Corners Road. Said vehicle, a truck, appeared to increase speed as soon as it passed by. Tr. at 9. The officer stated he didn't immediately have a place to turn around; however, once he did reverse direction and began proceeding eastbound, he lost visual on the truck. Tr. at 9. However, as he continued traveling in the eastbound lane on Havens Corners, he came into contact with appellant's car, a Honda Accord, traveling westbound in the opposite lane. Tr. at 10. This time the officer was able to turn around quickly. Colles later told the court the speed limit in the area is 35 MPH, and his speed reading on the radar unit recorded appellant's Honda going 50 MPH in moving mode. Tr. at 11. Colles is trained in estimating speeds and the use of speed-measuring devices. Tr. at 12. The officer thereupon effectuated a traffic stop for a speeding violation.

{¶4}.  It is undisputed that after appellant was stopped on April 27, 2014, Officer Colles proceeded to charge him with speeding and one count of OMVI. Appellant

entered a plea of not guilty, and on June 20, 2014, appellant filed a motion to suppress the results of his traffic stop. The matter of suppression was heard by the trial court on October 9, 2014.

{¶5}. Officer Colles did not testify at the suppression hearing about what happened after the initial traffic stop; rather, the focus was on the use of the radar, as further discussed *infra*.

{¶6}. After hearing the testimony and arguments of counsel, the trial court ultimately found that the officer acted in good faith reliance upon the admissibility or legitimacy of the use of the particular device to detect appellant's speed, which gave the officer probable cause to conduct a stop. *See* Tr. at 25.

{¶7}. On November 10, 2014, appellant entered a plea of no contest to the OMVI charge, following which appellant was sentenced *inter alia* to 180 days in jail.

{¶8}. On November 20, 2014, appellant filed a notice of appeal. He herein raises the following sole Assignment of Error:

{¶9}. "I.    THE TRIAL COURT COMMITTED HARMFUL ERROR BY OVERRULING APPELLANT'S MOTION TO SUPPRESS THE TRAFFIC STOP."

I.

{¶10}. In his sole Assignment of Error, appellant argues that the trial court erred in denying his motion to suppress. We disagree.

{¶11}. The Fourth Amendment to the United States Constitution and Section 14, Article I, Ohio Constitution, prohibit the government from conducting unreasonable searches and seizures of persons or their property. *See Terry v. Ohio* (1968), 392 U.S.

1, 88 S.Ct. 1868, 20 L.Ed.2d 889; *State v. Andrews* (1991), 57 Ohio St.3d 86, 87, 565 N.E.2d 1271.

{¶12}. There are three methods of challenging on appeal a trial court's ruling on a motion to suppress. First, an appellant may challenge the trial court's finding of fact. Second, an appellant may argue the trial court failed to apply the appropriate test or correct law to the findings of fact. Finally, an appellant may argue the trial court has incorrectly decided the ultimate or final issue raised in the motion to suppress. When reviewing this third type of claim, an appellate court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in the given case. *See State v. Fanning* (1982), 1 Ohio St.3d 19, 1 OBR 57, 437 N.E.2d 583; *State v. Williams* (1993), 86 Ohio App.3d 37, 619 N.E.2d 1141; *State v. Curry* (1994), 95 Ohio App.3d 93, 96, 641 N.E.2d 1172; *State v. Claytor* (1993), 85 Ohio App.3d 623, 627, 620 N.E.2d 906; *State v. Guysinger* (1993), 86 Ohio App.3d 592, 621 N.E.2d 726. The United States Supreme Court has held that "... as a general matter determinations of reasonable suspicion and probable cause should be reviewed de novo on appeal." *Ornelas v. U.S.* (1996), 517 U.S. 690, 116 S.Ct. 1657, 1663, 134 L.Ed.2d 911.

{¶13}. As an initial matter, we must briefly address appellant's assertion that the validity of the traffic stop was not fully adjudicated at the suppression hearing, as virtually all of the testimony focused on the use of a radar device to detect appellant's rate of speed during the incident in question. We note the following exchange at the beginning of the suppression hearing:

{¶14}. "THE COURT: I know that [the motion to suppress] encompasses a great number of issues but my understanding from our pretrial conference was that the only issue to be litigated here is the validity of the initial traffic stop. Is that correct Mr. Calesaric?

{¶15}. "[DEFENSE COUNSEL] MR. CALESARIC: Yes sir. For the record I'll stipulate that I am narrowing my motion down drastically to just that issue. * * *.

{¶16}. "THE COURT: Ok. Alright, so the only thing I'm going to decide is whether or not the initial traffic stop itself was valid and is the State ready to go?

{¶17}. "[ASSISTANT LAW DIRECTOR] MR. KING: We are."

{¶18}. Our review of the record does not indicate that the officer initially stopped appellant for anything other than speeding, such as non-functioning vehicle equipment or a marked lane violation. Given the above oral stipulations, we find no merit in appellant's proposal that more issues required resolution by the court at the suppression hearing.

{¶19}. Turning to the issue at hand, appellant first directs us to our decision in *State v. Miller*, 5th Dist. Fairfield No. 2012-CA-25, 2012-Ohio-6147, which likewise entailed the question of suppression in an OMVI case. In *Miller*, we analyzed R.C. 4511.091(C), which provides in pertinent part: "No person shall be arrested, charged, or convicted of a violation of any provisions of divisions (B) to (O) of Section 4511.21 or Section 4511.211 of the Revised Code or a substantially similar municipal ordinance

based on a peace officer's unaided visual estimation of the speed of a motor vehicle, trackless trolley, or streetcar. ***."[1]

{¶20}. The State herein concedes that a police officer's visual estimation is insufficient to support a speeding conviction. *See, e.g., Beachwood v. Joyner,* 8th Dist. Cuyahoga No. 98089, 2012–Ohio–5884, ¶ 17. However, we went even further in *Miller*, stating as follows: "Allowing an officer to *stop* a vehicle on their subjective impressions that a vehicle is traveling in slight excess of the legal speed limit may permit officers to do just what the legislature had abolished. In other words, permitting an investigative stop when the officer cannot arrest or charge based upon his unaided visual estimate of speed in slight excess of the speed limit effectively eliminates any protection against profiling and arbitrary detentions." *Id.* at ¶ 12 (emphasis in original).

{¶21}. Appellant also points us to, inter alia, *State v. McKay*, 1st Dist. Hamilton No. C–130657, 2014-Ohio-2027, in which the First District Court of Appeals concluded that a trial court cannot use judicial notice from another case regarding a similar speed measuring device for a different device. *See id.* at ¶11- ¶ 12.

{¶22}. We note Evid.R. 201(B) governs the trial court's ability to take judicial notice of adjudicative facts: "A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." The scientific reliability of a speed-

---

[1]   The General Assembly enacted R.C. 4511.091(C) in 2011 in response to the Ohio Supreme Court's holding in *Barberton v. Jenney,* 126 Ohio St.3d 5, 2010–Ohio–2420, 929 N.E.2d 1047, which held that a defendant can be convicted of speeding based solely on a police officer's visual estimation of speed where the evidence shows the officer has the proper training and experience. *See State v. Kincaid,* 5th Dist. Ashland No. 2012–COA–011, 2012–Ohio–4669, ¶ 19 - ¶ 22.

measuring device can be established by: (1) a reported municipal court decision, (2) a reported or unreported case from the appellate court, or (3) the previous consideration of expert testimony about a specific device where the trial court notes it on the record. *See State v. Yaun,* 3rd Dist. Logan No. 8–07–22, 2008–Ohio–1902, ¶ 12.

{¶23}. In the case sub judice, during Officer Colles' testimony at the suppression hearing, appellant objected to the testimony for the speed measuring device. Appellant maintained that without the trial court having taken previous testimony on the device, the court could not take judicial notice that the device is capable of an accurate and ready determination of speed. *See* Tr. at 12. The trial court overruled counsel's objection, relying on *State v. Vernon v. Meyers*, 5th Dist. Knox No. 87-CA-4, 1987 WL 15347, concluding that because this Court had therein ruled that K-55 radar is reliable, such reliability would extend to the entire K-band regardless of the model type. The court went on to find that the *Meyers* ruling authorized taking judicial notice of the reliability of the radar. Tr. at 13.

{¶24}. During the ensuing cross-examination, Colles stated he believed the device he was using was a Ka-band frequency, not K-band. Tr. at 13. He followed up by stating: "I know it's a K-band or a Ka-band [that] are the most common for the radar device ***." He further stated that a MPH Industries "Python III" was the product he used and that it comes with an X, K, and a Ka-band frequency. Tr. at 14. He added that MPH additionally sold other models like the "BEE3" and the "Enforcer" that also use a Ka-band. *Id.* The officer could not articulate the difference between the Python III Ka-band model and these other two. *Id.* He also could not describe the differences between the electronics of these devices. Tr. at 15. In any case, Officer Colles agreed that he did not

record in his police report a *visual* estimation of appellant's speed, although he recalled he had estimated it was greater than the posted limit at the area in question. Tr. at 15-16.

{¶25}. The essence of appellant's argument herein is that based on the officer's aforesaid testimony, the trial court erroneously reached a conclusion that judicial notice was appropriate, and therefore the speeding violation could not form the basis of a constitutional OMVI stop under *Miller*, *supra*. However, notwithstanding that *Miller* involved only a visual estimation and no measuring device at all, it is well-established that an officer's reasonable articulable suspicion does not require proof beyond a reasonable doubt that the defendant's conduct has satisfied the elements of the offense. *See*, *e.g.*, *Westlake v. Kaplysh,* 118 Ohio App.3d 18, 20, 691 N.E.2d 1074 (8th Dist. 1997). Thus, "the fact that [the arresting officer] may have relied upon a radar device known to him, but improperly identified at the suppression hearing, to determine whether a motorist was driving in excess of the posted speed limit is immaterial to whether he had a proper basis for effectuating an investigatory stop." *State v. Reddington*, 9th Dist. Medina No. 14CA0064–M, 2015-Ohio-2890, ¶ 16.

{¶26}. Accordingly, we find no reversible error in the trial court's denial of suppression under the facts and circumstances presented. Appellant's sole Assignment of Error is overruled.

{¶27}. For the reasons stated in the foregoing opinion, the judgment of the Municipal Court of Licking County, Ohio, is hereby affirmed.

By: Wise, J.

Hoffman, P. J., and

Farmer, J., concur.


JWW/d 0819